## APPEAL OF ROBERT DATESMAN.
## APPEAL OF E. P. DATESMAN ET AL.

### [DUNKEL v. DATESMAN.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF UNION COUNTY.

Argued May 16, 1889—Decided June 28, 1889.
[To be reported.]

1. The act of January 24, 1849, P. L. 677, prohibiting an execution sale of a life interest in real estate except upon notice to the life-tenant and with leave of court, etc., has no application to the sale of a life estate under a levari facias upon a mortgage given by the life-tenant, and such sale will pass his entire interest.

2. Where an auditor appointed to distribute the proceeds of such a sale, finds upon sufficient evidence that the mortgage under which the property was sold was given for the benefit of the life-tenant alone, the remaindermen having joined in it to perfect the security, the mortgage debt, as well as the costs and the expenses of audit, must be paid out of the interest of the life-tenant.

3. In distributing a balance remaining after payment of the debt and costs, where a life estate and the remainder are sold together under a mortgage given for the debt of the life-tenant, it is not error to fix the life interest at one third the value of the land, to charge against it the mort-

gage debt and all costs, and award to the remaindermen the other two thirds in cash.

4. Two methods of distribution are lawful: One, to treat the surplus as real estate and direct its investment, until with its accumulations it reaches the value of the land sold, and then award the interest on the amount to the life-tenant during life, and at his death the corpus to the remaindermen; the other, to value the life interest, give the tenant thereof his share in cash, and divide the balance in cash to the remaindermen.

5. A life-tenant is not to be allowed, out of the proceeds of a sheriff's sale of the entire estate in lands, the amount expended by him for permanent improvements, when they were trifling and unimportant in character and there was no evidence adduced to show that they were made with the consent of the remaindermen.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

Nos. 453 January Term 1889, 35 July Term 1889, Sup. Ct.; court below, Lev. Fa. No. 13 May Term 1888, E. D., C. P.

On May 19, 1887, upon levari facias No. 13 May Term 1888, the sheriff returned a sale of certain real estate as the property of Robert Datesman, E. P. Datesman and H. M. Datesman, at the suit of Hiram Dunkel, for $14,000, and the application to the writ for debt, interest and costs, of $4,314.43, leaving a balance of $9,685.57, which was paid into court. This balance was subjected to a prothonotary's commission, which left a net fund of $9,583.72, to distribute which among the persons entitled *Mr. H. P. Glover* was appointed auditor.

On December 20, 1888, the auditor filed a report showing a finding by him of facts which in substance were as follows:

The fund in court arose from the sale of certain real estate in Kelly township, of which Sarah J. Datesman in her lifetime was seised in fee, and which at her death, intestate, in 1862, descended to her husband Robert Datesman, and to her two sons, Edgar P. Datesman and Harris M. Datesman; the said Robert Datesman taking therein a life estate, as tenant by the curtesy, and Edgar P. and Harris M., each an undivided one half interest in fee in remainder.

In January, 1878, Robert Datesman borrowed $3,000 from one Alice Pilling; and Edgar P., his son, having become of age in June, 1878, secured this debt of his father by a mortgage to Miss Pilling, executed August 15, 1878, on his undi-

vided interest in the land, receiving on the same date from his father an assignment of the latter's life-estate in the land, as collateral security for the obligation thus incurred; but this assignment was not recorded until July 10, 1883.

On January 27, 1883, the mortgage to Miss Pilling was paid off with money borrowed from one Hiram Dunkel, who received as security therefor a mortgage on the land referred to, executed by Robert Datesman, Edgar P. Datesman and Harris M. Datesman, and duly recorded on the same day. This mortgage was the first lien on the land, and the one on which the judgment and sale were had which produced the fund in court, and it secured, as did the Pilling mortgage for which it was substituted, the personal debt of Robert Datesman, the life-tenant, his sons Edgar P. and Harris M. being but sureties therein.

On April 2, 1883, Robert Datesman, as life-tenant, and Harris M. Datesman, as owner of an undivided one half interest in fee in remainder in said land, executed a mortgage of their respective interests therein to one Abraham Fairchild, to secure a loan of $3,000 to said Harris M. Datesman, which mortgage was duly recorded April 3, 1883; in this mortgage Harris M. Datesman was the primary debtor and Robert Datesman was surety.

On October 26, 1887, judgment was entered in the Court of Common Pleas of Union county to No. 53 December Term 1887, by confession under a warrant of attorney on the bond accompanying said Fairchild mortgage, and the same day a fieri facias was issued thereon to No. 19 December Term 1887, and a levy thereon made upon the estates of said defendants bound by said mortgage, to wit, upon the life-estate of Robert Datesman and on the undivided one half interest in fee in remainder of Harris M. Datesman in said land.

On December 8, 1887, by virtue of said fieri facias which waived inquisition, the sheriff sold the undivided one half interest in fee in remainder of Harris M. Datesman in said land to Mary J. Datesman for $3,900; and on the same day struck off the life-estate of Robert Datesman in the land to Abraham Fairchild, the plaintiff in said fieri facias, at the sum of $100.

On December 22, 1887, the sheriff duly acknowledged in open court his deed poll to Mary J. Datesman for said half

interest in fee in remainder of Harris M. Datesman in said land; and on the same day paid to McCleery & Voris, Esqrs., as attorneys for Abraham Fairchild, the plaintiff in above fieri facias, the sum of $3,817.25, in full of the debt, interest, costs and attorney's commissions due him on said fieri facias. The sheriff also applied $44.70 to costs on said writ and afterwards paid the sum of $38.05 to Harris M. Datesman, defendant and principal debtor, thus fully appropriating the $3,900 realized out of the latter's interest in the land.

On December 22, 1887, also, the court made an order fixing March 15, 1888, for reading a special return of sale of the life-estate of Robert Datesman, under above fieri facias, to Abraham Fairchild, the plaintiff therein; which return was read on said date, March 15, 1888, and deed poll therefor acknowledged.

Default having been made on the mortgage to Hiram Dunkel, he recovered judgment thereon against Robert Datesman, Edgar P. Datesman and Harris M. Datesman, by scire facias to No. 104 March Term 1888, and alias scire facias to No. 31 May Term 1888, for the sum of $4,181.70, on April 28, 1888, and immediately issued a levari facias thereon, to No. 13 May Term 1888. Under the levari facias the sheriff made return that he had sold the land above mentioned to Mrs. Hannah Fairchild, wife of Abraham Fairchild, for the sum of $14,000, of which sum he applied $4,314.43 in payment of debt, interest and costs on said writ, and the balance, to wit, $9,685.57 was paid into court.

Before the auditor the claimants upon the fund were:

1. Abraham Fairchild, who claimed to own the life-estate of Robert Datesman by purchase thereof under his fieri facias No. 19 December Term 1887, as above stated, and to be entitled to the entire fund in court for and during the lifetime of Robert Datesman.

2. Edgar P. Datesman and Mary J. Datesman, who claimed the entire fund as owners of the land sold; Edgar P. Datesman also claiming as vendee and assignee of all the estate of Robert Datesman in said land, by virtue of a bill of sale or assignment of said estate, executed August 15, 1878, as above mentioned.

3. Robert Datesman, who claimed that the fund in court remaining after the payment of the mortgage debt represented the land, and that, as life-tenant, he was entitled to the same for life.

4. Ephraim Datesman, who appeared as plaintiff in a judgment entered May 12, 1887, to No. 138 May Term 1887, against Harris M. Datesman, which judgment, however, was discharged by the sale on the Fairchild fieri facias No. 19 December Term 1887, and was no lien on the fund now in court.

The auditor, discussing §§ 68–71, act of June 16, 1836, P. L. 775; §§ 6, 7, 8, act of October 13, 1840, P. L. (1841) 3; Pentland v. Kelly, 6 W. & S. 484; Dennison's App., 1 Pa. 201; Parget v. Stambaugh, 2 Pa. 485; Snavely v. Wagner, 3 Pa. 275; Eyrick v. Hetrick, 13 Pa. 488; §§ 3, 4, act of January 24, 1849, P. L. 67; Commonwealth v. Allen, 30 Pa. 52; Kintz v. Long, 30 Pa. 502; Snyder v. Christ, 39 Pa. 507, ruled inter alia, that the sale of the estate of the life-tenant, either upon the writ to No. 19 December Term 1887, or upon that to No. 13 May Term 1888, passed no title thereto, because the act of January 24, 1849, had not been complied with in the following respects: (1) Neither sale was upon a venditioni exponas, preceded by a fieri facias and condemnation: (2) There was no order of court upon the applications of a lien creditor for the writs, after ten days notice of such applications to the life-tenant.

Wherefore the auditor reported as conclusions of law:

1. That notwithstanding the waiver of inquisition in judgment No. 53 December Term 1887, of Abraham Fairchild against Robert Datesman and Harris M. Datesman, the sale upon fieri facias No. 19 December Term 1887, was ineffectual and did not pass to said Abraham Fairchild the life-estate of Robert Datesman levied upon.

2. That the life-estate of Robert Datesman was not divested by the sale under the Dunkel mortgage, and that only the fee estate in remainder passed by said sale.

3. That the entire fund in court belonged to Edgar P. Datesman and Mary Jane Datesman, as the owners of the estates or interests that passed by said sale; and that, as to the mortgage debt which is first paid out of proceeds of said sale, the estates of said Edgar P. and Mary J. Datesman were only sureties, the undivested life-estate being the primary debtor.

The auditor accordingly reported a distribution of the net fund in court, to wit, . . . . . $9,583.72 as follows:

|  |  |  |
|---|---|---|
| To costs of audit, | . . | $ 172.72 |
| To Edgar P. Datesman | . | 4,705.50 |
| To Mary J. Datesman | . | 4,705.50—$9,583.72 |

Exceptions were filed to the foregoing report by both Abraham Fairchild and Robert Datesman, and after argument thereon, the court, BUCHER, P. J., on March 12, 1889, filed an opinion which after stating the facts proceeded:

On the facts just stated where does the surplus, $9,583.72, go? Abraham Fairchild claims whatever sum will represent Robert Datesman's life-estate, but his difficulty is, that he purchased this life-estate, if at all, on a sale made on a fieri facias issued on a mortgage bond waiving inquisition, whereas the act of January 24, 1849, allows a sale of a life-estate only on a venditioni exponas issued by direction of the court, and after notice to the tenant for life; and here there was neither venditioni exponas, direction of the court, nor notice to the tenant for life: Commonwealth v. Allen, 30 Pa. 52; Kintz v. Long, 30 Pa. 602; Pentland v. Kelly, 6 W. & S. 481.

\* \* \* \* \* \* \* \*

But the auditor also concludes that a life-estate mortgaged cannot be sold under a levari facias issued on the judgment recovered on a scire facias; that it must be taken in execution as provided by the act of January 24, 1849; and that Hannah Fairchild's purchase of the land under the Dunkel mortgage did not carry Robert Datesman's life-estate, and that it is still intact and she owns the farm subject to it. If this is true, it is most unfortunate for this woman, who has paid full value for an out and out title. The act of 1705, 1 Sm. L. 59, provides that where default is made by mortgagors, at any time after twelve months therefrom, " it shall and may be lawful to and for the mortgagees . . . . . to sue forth a scire facias; . . . . . judgment to be given upon such scire facias . . . . . that the plaintiff in the scire facias shall have execution by levari facias; . . . . . the said mortgaged premises shall be taken in execution and exposed to sale . . . . . and upon sale conveyed to the

buyer . . . . . and freed from all equity and benefit of re-demption."

We have seen that the act of January 24, 1849, provides the mode of selling life-estates : that ordinarily they cannot be sold on a fieri facias or levari facias sur mechanics' lien. Was that act intended to apply to a mortgage ?

A mortgage is a conveyance of the realty as well as security for a debt; and the holder may resort to ejectment even if the estate mortgaged is a life-estate. All the cases cited were or-dinary judgments, except Pentland v. Kelly, 6 W. & S. 483, which was a mechanics' lien ; and there execution was restrain-ed because a sequestrator had already been appointed. No case has yet arisen on a mortgage which we have been able to discover. The question, then, is one of first impression. To require different forms of execution to issue simultaneously on the same judgment founded upon a mortgage would be bur-densome and inconvenient; a fieri facias, levy, inquisition and venditioni exponas against the life-tenant defendant, and a levari facias against the owner of the fee, and sales made at least weeks apart, an extent as to one and a sale as to the other. Under proceedings to enforce payment of a mortgage there can be no extent, and as the object of the acts of 1836, 1840 and 1849 was to prevent the sacrifice of life-estates, by applying rents and profits to the liquidation of the debts against them, those acts might well apply to all judgments where an extent is allowable. It is true that in Pentland v. Kelly, supra, a mechanics' lien was held within the acts. But a mechanics' lien does not exist by the written conveyance of the debtor, it is adverse; whereas a mortgage is a voluntary act and deed of the mortgagor, with specific remedies for col-lection, and is in fact a conveyance of the land itself and a specific pledge that it shall be responsible for the payment of the debt.

In the absence of express decision on the very question in-volved, we will hold that the life-estate of Robert Datesman passed to Mrs. Fairchild along with the fee of the remainder-men by the sheriff's sale. It never could have been intended that there should have been a difference in selling a life-estate and a fee on a mortgage. It would be burdensome, anomalous, unreasonable and unjust. The life-estate might pass to one

man, the fee to another. It is unfair to Mrs. Fairchild, who has paid full value for a clear title obtained at a sale, to enforce the collection of a claim in which the life-tenant and the remaindermen all joined and agreed that if default was made in the payment of the debt for which the land was specifically pledged, the same should be sold.

This conclusion affects the appropriation made by the auditor but slightly. The facts found by him make Edgar P. Datesman and Harris M. Datesman sureties for their father in the Dunkel mortgage, and they are entitled to have the Dunkel mortgage debt of $4,314.43 paid out of their father Robert Datesman's share of the fund.

Having reached the conclusion that the life-estate of Robert Datesman passed by the sale, we come to the appropriation of the entire surplus. There are two methods of appropriation open to us; one is to treat the surplus as real estate, and direct it to be invested until the accumulated interest on it swells the surplus to $14,000, the entire value of the estate, and then award the interest of this $14,000 to Robert Datesman, the tenant for life, so long as he lives, and at his death the principal or corpus of the estate, $14,000, to the remaindermen; this accumulated interest to compensate the remaindermen because their interest was taken to pay the debt of the tenant for life. The other is, to treat the sale on the mortgage by all the parties in interest as a voluntary one; that is, the parties conveyed by mortgage and therefore subjected the property to sale by process, just as if they had deeded the two interests, life-estate and fee, to a purchaser. If they had done so, it is clear that their respective interests would have been one third for the life-estate and two thirds for the fee. The conversion, then, being for the debt of all, so far as the Dunkel mortgage was concerned, and by the consent of all three, the equitable rule in dividing the proceeds of a sale of the entire estate at one third and two thirds, is that one third cash, or absolutely, is equivalent to the interest on the whole for life.

How can Robert Datesman complain? If a man gets $1,000 cash absolute, that is equal to interest for life on $3,000. I take it this is what the common law rule means in valuing a life-estate at one third. It was the debt of the life-tenant which caused the sale, and he has thus voluntarily terminated his life-

estate and caused a sale of the fee also. If his life-estate only had been sold to pay his debt of $4,314.43, it would not have been paid, and there would have been no surplus. Then why should he receive interest when it took nearly all his interest to pay his debt? The land was converted by consent of all the owners. We will adopt the common law rule, which gives the value of the life-estate as one third of the fee. This seems more reasonable than to tie up the entire fund during the life of the tenant for life, by giving him the interest on the whole for that period. The sale must be treated as a conversion of all the interests into money, just as if they had all joined in a conveyance to a stranger for $14,000 as the value of all their interests. . . . . .

Nothing remains save to make the appropriation and a suitable decree.

The court then divided the entire proceeds of sale, $14,000, into three equal parts, one of which, $4,666.66, less the mortgage debt and costs, $4,314.43, and the prothonotary's commission, $101.85, and the costs of audit, $172.72, leaving $77.66, was awarded to Robert Datesman, the remaining two thirds to E. P. Datesman and Mary J. Datesman, and signed the following decree:

And now, March 12, 1889, all the exceptions not sustained in the foregoing opinion are overruled, and it is ordered, adjudged and decreed that the fund in court for appropriation, which is . . . . . . . . . . . . . . . . . . . . . . . . $9,583.72
be paid thus:

| | |
|---|---|
| To Robert Datesman, . . . . . . . . . . | $77.66⅔ |
| To Mary J. Datesman, . . . . . . . . . | 4,666.66⅔ |
| To Edgar P. Datesman, . . . . . . . . . | 4,666.66⅔ |
| To Costs of Audit, . . . . . . . . . . . | 172.72 |

Net amount for distribution . . . . . . . . . . . $9,583.72

Thereupon Robert Datesman took the appeal to No. 453, supra, specifying that the court erred, inter alia:

1. In distributing the fund in court to the remaindermen, in the lifetime of the tenant for life.

3. In holding that the life-estate of Robert Datesman passed,

along with the fee of the remaindermen, to the purchaser at sheriff's sale under the levari facias No. 13 May Term 1888.

4. In not allowing to the life-tenant the amount expended by him for permanent improvements, as found by the auditor.

5. In charging the entire costs of sheriff's sale, audit, etc., against the share of the life-tenant.

And Edgar P. Datesman and Mary J. Datesman took the appeal to No. 35, supra, specifying that the court erred, inter alia:

1. In refusing to confirm the finding of the auditor, that the life estate of Robert Datesman was not divested by the sale under the Dunkel mortgage, and that only the fee estate in the remainder passed.

3. In decreeing any portion of the fund in court to Robert Datesman.

*Mr. William R. Follmer* and *Mr. Samuel H. Orwig*, for Robert Datesman, appellant.

*Mr. Andrew A. Leiser* and *Mr. Charles S. Wolfe*, for Edgar P. and Mary J. Datesman, appellants.

*Mr. C. G. Voris* and *Mr. J. Merrill Linn*, for Abraham and Hannah Fairchild, appellees.

### ROBERT DATESMAN'S APPEAL.

OPINION, MR. CHIEF JUSTICE PAXSON:

The first question we have to consider is whether the life estate of Robert Datesman passed by the sheriff's sale on the writ of levari facias No. 13 May Term 1888. Prior to the sale the title was vested in the said Robert Datesman as tenant for life, with remainder to his two sons, Edgar P. Datesman and Harris M. Datesman. While the title stood in this position, the life-tenant and the two remaindermen united in a mortgage to Hiram Dunkel for $4,181.70. Upon this mortgage a scire facias was issued, and upon the judgment recovered thereon a writ of levari facias was issued, No. 13 May Term 1888, and the mortgaged premises sold for $14,000. It is upon the distribution of this fund that the questions in this case arise.

It was a conceded fact that the sale by the sheriff was without notice to the life-tenant or leave of court, as required by

the act of 1849. It was contended on behalf of the appellant that under said act a life estate can only be sold upon a writ of venditioni exponas after ten days' notice to the life-tenant, and by leave of court, and a number of cases were cited in support of this proposition. Pentland v. Kelly, 6 W. & S. 483, was the case of a writ of levari facias issued upon a mechanics' lien. Parget v. Stambaugh, 2 Pa. 485; Snavely v. Wagner, 3 Pa. 275; Eyrick v. Hetrick, 13 Pa. 488; Commonwealth v. Allen, 30 Pa. 49; Kintz v. Long, 30 Pa. 501; and Snyder v. Christ, 39 Pa. 499, were all sales upon a writ of fieri facias or venditioni exponas. There is no question as to the law of these cases. Whether they apply to a sale under a mortgage is a different matter. Upon this point the industry of counsel has not furnished us with any decided case in this state, and I do not think it has been expressly ruled. I see no difficulty, however, in disposing of it upon principle. A sale of a life estate upon a mechanics lien, or an execution issued upon an ordinary judgment, is an adversary proceeding. A life-estate is an uncertain thing, and an adverse sale thereof can rarely take place without a serious sacrifice. The law, therefore, wisely lays its hand upon such a proceeding and prohibits a sale except upon certain conditions. But a sale upon mortgage is a different matter. No one doubts that a life-tenant may convey his estate by deed. A mortgage is but a conveyance with a clause of defeasance. It is something more than a lien; it is the grant of an estate as specific security for the money loaned. The mortgagee is not bound to proceed by scire facias, but may bring his ejectment. Moreover, a mortgage contains an express stipulation that if default be made in the payment of the money secured, the mortgagee may at once proceed to collect the same, and may issue a writ of scire facias thereon, "any law, usage, or custom, or anything herein contained, to the contrary notwithstanding." We are entirely clear that the act of 1849 has no application to the sale of a life-estate upon a mortgage given by a life-tenant, and that such sale passes his entire interest.

The remaining questions refer to the distribution. The auditor has found, and upon sufficient evidence, that the mortgage under which the property was sold was given for the benefit of the life-tenant alone, the two remaindermen having

joined in it to perfect the security, but without receiving any part of the proceeds. Under such circumstances the mortgage must be paid out of the interest of the life-tenant, as also the expenses and costs of audit, as they were rendered necessary by his default. There were two modes of disposing of the fund, either of which would have been allowable. One was to invest the fund until with its accumulated interest it would amount to $14,000, the sum which the property brought at the sheriff's sale, after which the life-tenant would have been entitled to the interest on the fund for life; the other was to value the life interest, give the tenant thereof his share in cash, and divide the rest between the two remaindermen. The court adopted the latter principle, and followed the old common law rule in force in England, and recognized in this state in Dennison's App., 1 Pa. 201, and in Shippen's App., 80 Pa. 391, that one third of the capital sum is the measure of the life interest. The court therefore awarded $67.66, which was all there was left of his interest, to the life-tenant, and the balance was equally divided between the two remaindermen. We see no error in this. The life-estate in the land was destroyed by the act and default of the life-tenant; the fund realized by the sale represented the entire title to the property; the interest of the life-tenant therein had been exhausted within a few dollars, and no good reason is apparent why the remaindermen should not have their money.

What has been said covers all of the assignments of error except the fourth, in which complaint is made that the court below erred in not allowing to Robert Datesman, the life-tenant, the amount expended by him for permanent improvements, as found by the auditor. I do not see that the appellant made any such claim before the auditor; certainly no such exception was made to his report. There was some evidence before him tending to show that the life-tenant had made some trifling improvements and repairs, but it was so unimportant as not to be included in his findings of fact. There was nothing to show that the improvements were made with the consent of the remaindermen, and it is settled law that the life-tenant cannot of his own motion improve the remaindermen out of their estate. Where the latter consent to improvements for the mutual benefit of the joint estate, and the property is afterwards sold

to promote the interests of both, equity would perhaps allow the life-tenant a reasonable compensation for the value of the improvements. This assignment is not sustained.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.

## APPEAL OF EDGAR P. DATESMAN ET AL.

OPINION, MR. CHIEF JUSTICE PAXSON:

This appeal was from the same decree as Robert Datesman's Appeal just decided, and presents no question that was not considered and decided in that case. We need not repeat what was there said.

Decree affirmed, and the appeal dismissed at the costs of the appellants.