## Conner's Estate.   Lutz's Appeal.

*Trusts—Life tenant and remainderman—Damages for taking property—Distribution.*

Where property belonging to a trust in which one person had a life interest and another an interest in remainder was taken in part by the City of Philadelphia, under its power of eminent domain, and damages were assessed, and subsequently on account of a change in the location of a boulevard the entire property was taken at a price agreed upon, the entire sum is to be treated as principal in the absence of any evidence to show that any part of it represented compensation for loss of rentals. The fact that for a considerable period the property had been unproductive pending the proceedings by the city does not change the matter. The life tenant, in these circumstances, is no more entitled to an allowance or apportionment from the principal of the estate than he would be if the premises were destroyed by fire and remained without a tenant until the rebuilding was completed from the insurance moneys.

Argued January 22, 1913.   Appeal, No. 387, Jan. T., 1912, by J. Edward Lutz, Trustee, by Addington Gordon Brinckle, from decree of O. C. Philadelphia Co., April T., 1906, No. 656, dismissing exceptions to re-adjudica-

tion of account of J. Edward Lutz, Trustee, in the matter of Estate of Rachel A. Conner, deceased. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to re-adjudication of account of J. Edward Lutz, Trustee.

GEST, J., filed the following opinion:

This account of the trustee has hitherto been before this court upon exceptions filed, and was referred to the auditing judge in an opinion reported in 21 Pa. D. R. 107, to determine upon further testimony whether any part of the proceeds of sale of the real estate concerned should be distributed as income. This real estate, which was assessed for taxation at $17,000, lay partly in the line of the Parkway. On November 26, 1906, the city entered its bond to secure the damages to be incurred by the taking. On December 3, 1907, the tenant vacated, and since then no rent was received. Subsequently, a portion of the house was physically taken, rendering the remainder uninhabitable and untenantable, and on June 26, 1908, the road jury, which began its hearing in December, 1907, awarded damages for the partial taking of the premises in the sum of $8,300 from which award both parties appealed to the Court of Common Pleas. Pending the appeals, and on the eve of the trial thereof, the lines of the Parkway were changed so as to include the whole building, and the city offered the sum of $30,000 for a conveyance, which offer the trustee accepted, and on December 22, 1910, conveyed the entire premises to the city upon payment of $30,000, which sum is now accounted for.

Not only has the life tenant been deprived of his income from the rental of the property, but the trustee has been obliged to pay taxes and interest on mortgage, etc., up to the final sale, for which credit was taken in the income account. The life tenant has undoubtedly been subjected to hardship, but we do not find, under the evi-

dence, any way in which he can be relieved. There was nothing in the testimony to show how the road jury arrived at their award of $8,300 or what elements entered into its computation; nor was there any tangible evidence to show that in the sale to the city for $30,000 there was included, as such, anything in the nature of compensation or damages for the loss of rentals.

The damages allowed by the road jury were assessed for the injury to the real estate, as such, and nothing was specifically included for loss of rentals. Any apportionment thereof by the court would be a mere guess as to what was in the minds of the jurors or intended by them. Nor can it be urged that the life tenant is entitled to the interest on the award, or the income that might by supposition have been earned upon the money, if it had been received by the trustee and invested, for it would have been the duty of the trustee to have used the money in repairing and rebuilding of the property, in order, first, to protect the estate of the remaindermen therein, and, secondly, to make the property tenantable and thus obtain an income for the life tenant, and it appears by the evidence that the greater part of the damages would have been required to repair or rebuild.

Even stronger is the argument against any apportionment of the $30,000 for which the entire property was finally sold. There was nothing in the evidence to show that any part of this sum was paid by the city or received by the trustee by way of compensation for the loss of rentals, and nothing upon which the court could assume to apportion it, for we cannot assume that the property would have yielded the rent of $125 per month as theretofore received, or any other definite sum, if the premises had not been affected by the opening of the Parkway. This sale was not in effect different from any sale by a trustee of unoccupied or idle property, and it has never been claimed that upon such sale being made the life tenant could demand a portion of the price to

compensate him for the income which he had failed to receive.

There have been cases where the taxes and other charges upon unproductive real estate have been held to be payable out of principal, in relief of the life tenant (see Howles on Income and Principal, 63), but such cases, it will be found upon examination, depend upon the obvious advantage to be derived by holding the real estate until its value should have increased, when a sale would be for the common benefit, so that the taxes might properly and justly be held chargeable against that prospective increase in value. But in this case the property, while actually unproductive, cannot be said to have been so theoretically, for the damages awarded by the jury of view include the sum requisite, in the judgment of the legal tribunal, to replace the premises in tenantable condition. The life tenant, in these circumstances, is no more entitled to an allowance or apportionment from the principal of the estate than he would be if the premises were destroyed by fire and remained without a tenant until the rebuilding was completed from the insurance moneys.

We have been referred to no authorities that in our judgment support the claim of the exceptant, and our own examination has failed to discover any. Klages v. Terminal Co., 160 Pa. 386, simply held that the jury on the trial of an appeal from the assessment of damages in condemnation proceedings may properly consider the lapse of time between the taking of the land and the time of the trial in making up the amount of their verdict, but the court expressly said that "interest as interest has no place in the computation of damages;" and a note to the case on page 391 refers to Donaldson v. Penna. R. R. Co. in the Supreme Court, 5 Pa. C. C. R. 62, note, holding that where the landowner appeals he opens the whole case and therefore when he subsequently withdraws his appeal, he was not entitled to the interest accruing in the interim. In the present

case the landowner appealed, and subsequently instead of merely discontinuing his appeal, marked the proceedings satisfied of record.

In Witzel's Estate, 10 Pa. D. R. 462, the executor had charged himself with the sum of $4,438.99 for damages "causing loss of rent." It appeared that the injury resulted from the laying by the city of a drain intended to carry off the water of a creek near the real estate owned by the decedent. The drain proved faulty or inadequate and diverted the water into the cellar of the buildings, which thereby became unsafe and practically untenantable. ASHMAN, J., said, "The life tenant was of course deprived of most of the rents which the houses had formerly yielded, but it was very evident from the testimony which was submitted at the trial as well as from the charge of the trial judge, that the jury awarded damages, not for the loss of rent, but for injury to the freehold. It was error, therefore (although from the peculiar presentation of the case it was a natural error), to treat the sum so awarded as belonging to income." In the present case the testimony taken before the road jury contains, as above said, nothing to show that the jury in arriving at their award of $8,300 took the loss of rentals into consideration or allowed any part of that sum by way of interest or compensation for delay.

And finally, no argument in favor of the exceptant can be based upon such cases as Grim's Appeal, 105 Pa. 375, where an interest-bearing debt due to the testator was compromised for a round sum which was apportioned between the life tenant and the remaindermen. This was nothing more than an example in simple proportion which a schoolboy could solve; but an attempt to state the problem in the present case in similar terms will readily be found to be impossible without assuming facts to exist which are not established by the evidence.

Whatever hardship there may be in the present case,

we do not see how it would be possible to correct it without making a precedent that might cause other hardships hereafter, and would, probably, in future cases, necessitate unending distinctions, as every decision does which is not grounded upon principle but upon the mere desire, however laudable it may be, to do what is vaguely called abstract justice. The hardship of the life tenant in the present case has been, however, mitigated by the success of the trustee in effecting a prompt and satisfactory sale to the city, whereby a further loss of income was averted, and the life tenant became at once entitled to what could be earned from a capital sum largely increased in amount.

The exceptions are dismissed.

J. Edward Lutz, Trustee, appealed.

*Error assigned* was the decree of the court dismissing the exceptions.

*E. Spencer Miller,* for appellant.—It is the contention of the appellant that a sufficient sum should be transferred from the item of $30,000 collected from the city, appearing in the principal account, and inserted in the income account, to afford interest upon the primary damages for injury to the fee of premises, by the partial taking of the property and the cost of current maintenance while the property was unproductive: Rea v. Pittsburgh, Etc., R. R. Co., 229 Pa. 106; Oliver's Est., 136 Pa. 43; Thomson's App., 153 Pa. 332; Yoders v. Amwell Twp., 172 Pa. 447.

No paper book or appearance for appellee.

Per Curiam, February 24, 1913:

The decree of the Orphans' Court is affirmed on the opinion of Judge Gest, dismissing exceptions to the readjudication.