## Ginder Estate

*J. Marlin Shreiner*, for accountant.

*Henry F. Gingrich*, for claimant.

*Alfred C. Alspach*, for devisees.

APPEL, A. J., January 16, 1975.—The matters requiring determination by the court in this estate arise from objections which have been filed to the account of the administrator de bonis non cum testamento annexo and from a claim by a son of decedent for "substantial improvements and repairs" placed on a farm which was the main asset of decedent's estate.

Henry E. Ginder died on April 10, 1941, survived by the following: a spouse, Maggie S. Ginder; a son,

Samuel S. Ginder; a daughter, Fannie S. Ginder; and three children of Roy S. Ginder, a son who died July 9, 1936, namely, Nancy Ginder Pellow, Robert Ginder and Doris L. Carter.

A typed will dated July 8, 1921, having interlineations in ink was probated on April 24, 1941. There is nothing of record which establishes what was then probated. In August of 1956, the three grandchildren then having reached the then legal age, executed a petition which was filed on September 1, 1956. Subsequently, on September 26, 1956, the register entered a "Decree of Probate and Grant of Letters" from which it may be concluded that the typed writing of the will with the inked signatures, but not the interlineations in ink, constituted and comprised decedent's will. The dispositive provision thereof was thereupon reduced to simplicity, as evident by the following:

"Item:—I give and bequeath unto my beloved wife, Maggie S. all my Estate, real, personal and mixed, for and during her natural life and as long as she remains my widow, and at her death or remarriage, all my estate shall be sold and the proceeds to be distributed between my children."

Maggie S. died November 11, 1973. The children of testator, Samuel and Fannie, are living and the above-named children of the deceased child are living. Unfortunately, what had been reduced to simplicity has been converted into complexity by what transpired during the intervening years. . . .

The main questions in the order in which they will be discussed are:

1. Is Samuel S. Ginder entitled to be reimbursed for the various expenditures which he has made for "substantial improvements and repairs"?

2. Is the accountant subject to surcharge because

of its failure to account for the proceeds from the eminent domain proceedings received by Maggie S. Ginder, as executrix and as life tenant, being in the sum of $14,597.70?

3. Is Samuel S. Ginder entitled to payment of the sums for which judgment notes were given by Maggie S. Ginder, Executor of Henry E. Ginder Estate, in the sums of $7,940.17 and $13,271.74?

There are other lesser objections and claims which will be disposed of without further discussion of them at this point.

1. *Claim for expenditures.*

The testimony clearly establishes that Samuel S. Ginder occupied the farm from 1941 to 1973 as a tenant. He admittedly farmed it on the halves until 1945. This is a relationship of landlord and tenant. His mother, Maggie S., was the life tenant and had sufficient power and authority thereby to lease the farm during her life tenancy. Samuel asserts that the arrangement changed in 1945 when he started to pay a cash sum to his mother and undertook to pay other expenses incident to his mother's obligations as life tenant. Although he sought to establish that the annual sum paid had a relationship to a sum for which his mother was willing to sell him the farm, the mother was, in fact, without authority to bargain away the interests of the remaindermen; therefore, we must deem the relationship between Samuel and his mother to have been based on her life tenancy interest and the only commitment she could make to him was for the duration thereof. Since she gave him the right of occupancy and use subject to the payment of cash and the performance of other obligations, we must conclude that the landlord-tenant relationship continued after 1945, although the terms

thereof were different from those which had existed previously.

We have not only had considerable difficulty in ascertaining what Samuel's claim is but we have also been unable to determine on what basis his claim has been advanced.

The law pertaining to a landlord's duty to pay for work done by a tenant was applied more than a century ago in Cornell v. Vanartsdalen, 4 Pa. 364 (1846), at page 373, as follows:

"The landlord, it is true, is not bound to allow the tenant for repairs on any improvements whatever, made without authority. If the tenant repairs, he does it at his own expense, and if he chooses to put permanent repairs on leased property, he cannot charge it in account with the landlord. Long v. Fitzimmons, 1 Watts & Serg. 532; 3 Kent's Com. 468, and 4 Kent's Com. 110. But where the repairs are made with the assent and by the authority of the landlord, the law is otherwise, for in that case the expense may be thrown upon the landlord, and that without any express promise to pay. If it was with his assent, and for his benefit, the law will imply an obligation to pay for them."

The rule thus enunciated was amplified in Kline v. Jacobs, 68 Pa. 57 (1871), in which Mr. Justice Sharswood said:

"And if a tenant choose to put permanent repairs on the leased property without the consent of the landlord, he cannot charge them in account with him."

The early case of Crest v. Jack, 3 Watts 238 (1834), stated the principle applicable to the placing of improvements on realty both generally and as to co-tenants, as follows:

"The foundation of property consists in its being an exclusive right: other persons cannot impair its enjoyment, or impose burthens on it by intermeddling with it without the owner's leave, or color of legal authority. And this doctrine holds as well with respect to joint owners as to strangers. One joint tenant, or tenant in common, cannot erect buildings or make improvements on the common property without the consent of the rest, and then claim to hold until reimbursed a proportion of the moneys expended: nor can he authorize this to be done by a third person. If he desires to improve without asking the assent of a co-proprietor, his course is to have his share set off by partition, and to deal with that as he may see proper.

"This is the rule at law. There are, however, cases, in which an owner of land standing by and permitting another to expend his money in improving it, has, in equity, been deemed a delinquent, and been compelled to surrender his right on receiving compensation, or else to pay for the improvement. But in these cases there is always some ingredient which would make it a fraud in the owner of the land to insist on his legal right. There is something like encouragement to the other's going on; or the one party acts ignorantly and without the means of better information, and the other remains silent when it is in his power to prevent him from expending his money under a delusion. To permit such a one to take advantage of the mistake would be revolting to every sentiment of justice. But on the other hand I know no case where equity has, on the mere ground of silence, relieved one who is perfectly acquainted with his rights, or has the means of becoming so, and yet wilfully undertakes to proceed in expending money

on the land of another without obtaining or asking his consent. His ignorance, if it exists, is wilful, and he acts at his peril."

The right of a life tenant to compensation for improvements was determined in Pennsylvania in Datesman Appeal, 127 Pa. 348 (1889), in which Mr. Chief Justice Paxson wrote the following:

"What has been said covers all of the assignments of error except the fourth, in which complaint is made that the court below erred in not allowing to Robert Datesman, the life-tenant, the amount expended by him for permanent improvements, as found by the auditor. I do not see that the appellant made any such claim before the auditor; certainly no such exception was made to his report. There was some evidence before him tending to show that the life-tenant had made some trifling improvements and repairs, but it was so unimportant as not to be included in his findings of fact. There was nothing to show that the improvements were made with the consent of the remaindermen, and it is settled law that the life-tenant cannot of his own motion improve the remaindermen out of their estate. Where the latter consent to improvements for the mutual benefit of the joint estate, and the property is afterwards sold to promote the interests of both, equity would perhaps allow the life-tenant a reasonable compensation for the value of the improvements. This assignment is not sustained."

The rule stated in Datesman Appeal is recognized generally. Thompson on Real Estate in section 1900 states that: "A life tenant has no legal claim to compensation for improvements." 1 Tiffany on Real Property in section 64 discusses the subject in greater detail as follows:

"[A life tenant] is under no obligation to make improvements, and if he does so, he cannot, apart from statute at least, demand that the owner of the inheritance pay any part of the cost thereof, in the absence of agreement between them to that effect."

It is apparent from the preceding discussion that if Samuel Ginder is claiming reimbursement as a tenant, as a co-tenant with the other remaindermen, or as one having a derivative right through the life tenant, the consent of the other remaindermen is a sine qua non to his entitlement. There is no evidence that Nancy Ginder Pellow, Robert Ginder or Doris L. Carter consented to the work done by Samuel; therefore, we are compelled to conclude that Samuel's claim is without merit.

Even if it were concluded that Samuel's claim was well bottomed, it would be necessary to reject the claim on different grounds. The evidence pertaining to the labor and materials which were funished by Samuel is too indefinite and uncertain as to what work was done, when it was done, whether it was in the construction of entirely new structure, or whether it was a replacement or refurbishing of something already in existence, whether what resulted therefrom was solely for the benefit of the person then using the farm or whether it was of lasting effect, and if of lasting effect whether it was depreciable and if depreciable over what period of time, etc., etc., etc. At no point has the claimant produced testimony which would clearly answer the above matters with respect to each part of the work done. He has at no point established for our consideration what he considers his total claim to be, and we are unable to reach a total based on the evidence presented. In the written claim filed by the claimant, the amount of the claim

is stated to be, "In excess of $20,000," and the character of the claim is described as "Substantial improvements and repairs on the real estate in the name of the decedent." The manner in which the claim is set forth therein poignantly establishes the difficulties which pervade a determination of the amount of the claim and a delineation of what are improvements and what are repairs. These difficulties have not been alleviated by either the testimony which has been presented or by counsel's failure to analyze the evidence, correlate the proof and compile the results in the brief which has been filed.

We have previously concluded that the claimant is not entitled to have the claim allowed in any part because of the absence of the consent of the remaindermen. In addition thereto, we now find that even if consent had been given, or if the law did permit recovery without consent, the evidence presented does not substantiate a recovery because it is too uncertain and indefinite.

2. *Attempt to surcharge administrator d.b.n.c.t.a. re eminent domain proceeds.*

Both under case law and the Principal and Income Act, now section 8101, et seq. of the Probate, Estates and Fiduciaries Code of June 30, 1972 (No. 164), the receipt of damages for property taken in eminent domain proceedings where separate awards have not been made shall be deemed to be principal: Conner's Est., 239 Pa. 449 (1913), and 20 Pa. S. §8103(b).

The condemnation proceedings were under the Eminent Domain Code of June 22, 1964, Sp. Sess., P. L. 84, as amended, 26 PS §1-101, et seq. It provides for the furnishing by the condemnee of the names of all other condemnees known to him, 26 PS §1-506(a), and for the claims of all owners, including life tenants and remaindermen, to be tried together with appor-

tionment of the total amount of damages between or among the several claimants entitled thereto, 26 PS §1-507(a). For reasons not apparent on the record, neither of these requirements were fulfilled; however, the Report of Viewers Assessing Damages states that the viewers "assess the damages sustained by The Estate of Henry E. Ginder to be a total of $13,850."

It appears that payment of this sum was included in the check for $14,597.70 which was received by Maggie S. and cashed by Samuel. The explanation of the difference between the sum awarded and the sum of the check has not been fully established in the evidence; however, we believe that it may be fairly assumed that the additional sum is for something which occurred after the date of the award. We conclude that the additional sum was in payment either of interest or detention damages. In either event, the income legatee would be entitled to the additional sum.

The grandchildren remaindermen have objected to the failure of the accountant to proceed against the estate of Maggie S. Ginder and to account for the sum of $13,850 which would, it is asserted, be owed by her estate to the accountant. It has been indicated that Maggie left no estate; therefore, we believe that we cannot surcharge for failure to take steps which, if taken, would be unproductive.

We do not know the basis on which Maggie endorsed the check to Samuel. The testimony does establish, however, that Samuel was notified of the grandchildren's position that the life tenant and each of the remaindermen had an interest in the farm and would have to release his interest in the damages. Since the life tenant's interest in the fund has now been terminated, the remaindermen are now entitled to receive their respective shares of it. It appears that Samuel knew, or should have known, that the other

remaindermen had an interest therein. Since he received the entire proceeds and is a beneficiary of a part of the proceeds presently before the court, we have concluded that circuity of action will be avoided by providing for the distribution of the sum awarded by the viewers in the adjudication to be filed herewith. In this way, the other remaindermen will be made whole and Samuel will wind up having received one-third of the sum assessed by the board of view.

3. *Samuel S. Ginder's claim based on judgment notes.*

Two notes signed by Maggie S. Ginder, Executor of Henry E. Ginder Estate, and payable to the order of Samuel S. Ginder have been filed as judgments in the office of the prothonotary. They total the sum of $21,211.91.

Section 105 of article I of the Fiduciaries Act of 1949, Act of April 18, 1949, P. L. 512, 20 PS §320.105, provides as follows:

"This Act shall take effect on the first day of January, one thousand nine hundred and fifty, subject to the following exceptions:

"(1) Decedents' estates. All sections of Articles I to VII, both inclusive, shall apply only to the estates of decedents dying on or after that day, and as to the estates of persons dying before that day, the existing laws on the topics included within those sections shall remain in effect."

Section 501, 20 PS §320.501, establishing the right of the personal representative to administer the real estate of decedent is a part of Article V.

Henry E. Ginder died in 1941; therefore, the provisions of the above act are not applicable hereto and it is necessary to ascertain the law applicable prior to the Act of 1949. Reference to Volume I *Hunter's Pennsylvania Orphans' Court Commonplace Book*

(1939), §18(a), Executors and Administrators, Supplement, and the cases set forth therein makes it abundantly clear that an executor then had "no power or duty regarding real estate unless it be conferred by the will."

We do not construe the direction that the estate be sold at the death or marriage of Maggie to confer on her the power to subject the real estate of decedent to liens. We, therefore, conclude that the claim of Samuel S. Ginder for payment of the sums of the notes must be denied. . . .