## Bomberger Estate.

Argued May 26, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*David B. Skillman,* with him *James E. Snyder,* for appellants, Rachel B. K. Fox and Beverly W. Kunkel, sole surviving executor.

*Paul G. Smith,* with him *Wilhelm E. Shissler,* for appellants, S. Lewis Motter et al.

*Edmund C. Wingerd,* with him *Douglass D. Storey,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 30, 1943:

These are nine appeals from a decision of an orphans' court construing the provisions of a testamentary trust, and the definitive decree of distribution pursuant thereto.

Testator, possessing a large estate, by a holographic will, created a trust for his sister, Rachel Kunkel, for life, with remainder to his six named nephews and nieces, children of his sister. The shares of the three nephews were to be paid in cash, and those to the nieces were placed in trust for life, with remainders to their children. Bequests were made of various real and personal property, and of cash, to named nephews, nieces, servants, friends and to a charity. Among other bequests, the one in question was a trust fund of $150,000, with $50,000 each, for his three nieces, Annie Montgomery, Ada Motter and Lilly Aughinbaugh. He directed that income from each fund should be paid to each of the nieces "as long as they live" and upon the decease of such niece the corpus was payable to her "child or children". Annie and Ada are deceased and the trust funds for their use have been distributed. This litigation solely concerns the distribution of the $50,000 trust fund

of the last surviving niece, Lilly Aughinbaugh, who died *without issue.* Testator provided for such a contingency. He wrote: "Should either of my nieces die without leaving a child or children, I order and direct that the bequest to such niece or nieces shall be equally divided among my nephews and nieces (children of my Sister Rachel), then living, the child or children of my ~~nephews~~ & nieces who may be deceased to have the share their mother would have been entitled to if living, . . ."

The auditing judge was therefore required initially to determine whether the bequest to "nephews and nieces *then living*" referred to those living at the time of testator's death or at the date of the death of the life tenant. He decided that these words, as used by the testator, referred to nephews and nieces *who were living at the date of the death of the life tenant.* Because no nephew or niece so survived, the court decreed distribution to the children of *deceased nieces,* by representation. It was further decided that because the children of deceased nieces were bequeathed a *vested* interest (as contradistinguished from their mothers' whose interests were *contingent* on survivorship) the deaths of two children during the lifetime of their mothers did not divest their interests and which were consequently payable to their personal representative. The decision of the lower court was clearly correct.

When testator died in 1897 he was survived by his three nephews, Charles A. Kunkel, Samuel Kunkel, and George J. Kunkel, and by the three nieces mentioned, all children of his sister Rachel. In 1942, when the niece Lilly Aughinbaugh (this life tenant) died, all of her brothers and sisters (the named nephews and nieces) had predeceased her. Charles left two children, Beverly and Rachel, who still survive and are the appellants in Nos. 21 and 23. Samuel and George left no issue. Ada had eight children, seven of whom survive, and are appellants in Nos. 31 to 37; another child, John C. Motter, died in her lifetime. Annie left to survive her a daughter

Rachel, who, however, predeceased the life tenant, and whose executors are the appellees herein.

The appellants in Nos. 21 and 23, children of a deceased nephew, contend that the court below erred in construing the words "then living" in the quoted paragraph to refer to the date of the death of the life tenant. It is maintained that a reading of the will, from its four corners, discloses an intent to bequeath the entire estate equally to the nephews and nieces. Such argument must be rejected. In the face of *express words* that such nephews and nieces must be living at the date of death of the life tenant we cannot substitute a supposed *implied* testamentary intent of equality. Indeed, as we read the various bequests in the will we are not convinced that an intent is apparent to divide the estate equally among all his nephews and nieces. True a vested interest is bequeathed to them of the residue and in the trust corpus concerning testator's sister, but it cannot be ascertained by examining the whole will and the quantum of the bequests that there existed a dominant intent concerning equality among such nephews and nieces. In the trust now before us, it is manifest that upon the decease of a nephew or niece *without issue,* it was only the child or children of deceased *nieces* who took, to the exclusion of issue of deceased nephews. Furthermore when testator bequeathed the remainder of the trust after the death of his sister, and also the residuary estate, he demonstrated that he was fully capable of passing a *vested* estate to such nephews and nieces—which, beyond all doubt, he purposely refrained from doing in the present trust.

But these appellants, if we correctly follow the argument of their learned counsel, maintain that even if it is conceded that the shares of these nephews and nieces are *contingent* nevertheless, the corpus should still be distributed among the children of *all* nephews and nieces. The argument is most ingenuous. It is suggested that because of the substitutionary gift to the child or

children of deceased nieces, who are to take *"the share their mother would have been entitled to if living",* it would require the "resurrection" of the mothers' interests. That because it would be impossible to ascertain at any given time just who did, or did not, or who *might,* survive each other, the shares of such deceased nieces should only be regarded as one-sixth each, which should pass to a niece's children, and the other four of the six shares should fall into the residue and be paid equally to the estates of all nephews and nieces. The answer to such an argument appears plain. The gift to the nephews and nieces *"then living"* was contingent. There are many authorities supporting this rule, among which may be cited: *Schmalzried's Estate,* 25 D. & C. 554; *Benedict's Estate,* 70 Pa. Superior Ct. 51; *Roop's Estate,* 274 Pa. 117; *Frasier v. Scranton Gas & Water Co.,* 249 Pa. 570; *Mulliken v. Earnshaw,* 209 Pa. 226. As all six nephews and nieces predeceased the life tenant, their estates took nothing. But testator, in that contingency, substituted the *child or children of deceased nieces.* In measuring the quantum of the shares, when he wrote that such child or children should take *"the share their mother would have been entitled to if living",* it clearly appears that the two mothers *"if living"* would have taken the entire corpus to the exclusion of the nephews who failed to survive the life tenant. It was the date of the death of the life tenant which fixed the time and method of distribution. *At that time,* if all nephews and nieces were deceased, and the child or children of deceased nieces took, by representation, the share of their mothers *as if such mother were then living* the court below was correct in awarding, by representation, *the entire corpus* to such child or children.

The court below divided the estate, by representation, among the child and children of deceased nieces. The fund was distributed in two parts, one half being awarded to the personal representative of a deceased child of one of the deceased nieces, and the other half

in eighths, to seven living children and to the estate of an eighth child of the other deceased niece. The seven living children, appellants in Nos. 31 to 37, contend that the substitutionary gift to children of deceased nieces was contingent upon said children surviving to the time of the distribution of the trust corpus.

The language which testator used did not impose the same contingency of survivorship upon the substitutionary gift to child or children of deceased nieces that it did upon the nephews and nieces. For a nephew or niece to take required that he or she be alive when Mrs. Aughinbaugh died without issue. However, if a *niece* left child or children, their interest was vested. They took in precisely the same manner as if their mother, a niece, had been living at the date of the death of Mrs. Aughinbaugh. There is nothing in the substitutionary gift which expressly states that children of deceased nieces must survive Mrs. Aughinbaugh. Much reliance is placed upon the phrase "& such part as or shall belong *to said living children* shall be put in and held by trust . . ." We agree with appellee that these words have no bearing upon the capacity of the children to take, but refer rather to children under 21 years of age whose parts of the share were to be put in trust, and who necessarily had to be living. The condition of survival to a fixed time is never *implied*. Such condition must appear plainly, manifestly and indisputably: *McCauley's Estate*, 257 Pa. 377—p. 380.

"When a condition of survival to the time of distribution has been annexed to the gifts to the first takers, but not to the gifts to the substituted beneficiaries, the condition is not to be implied with respect to the latter": President Judge VAN DUSEN in *Carpenter's Estate*, 42 D. & C. 367-369. See also: *Carstensen's Estate*, 196 Pa. 325; *McCauley's Estate*, supra; *Evans's Estate*, 5 D. & C. 551; *McCurdy's Estate*, 9 D. & C. 84.

We approve the interpretation of this trust as made by the learned court below, and the decree of distribu-

tion in connection therewith. The decree is affirmed. Costs to be paid from the fund.