Paul W. Allen et al., Trading as Farina Frozen Foods, Appellees, v. Keith Borlin, Appellant.

Term No. 48015.

Opinion filed February 23, 1949.
Released for publication March 21, 1949.

ROBERT G. BURNSIDE, of Vandalia, for appellant.

CHARLES R. MYERS, of Vandalia, for appellees.

Mr. Justice Scheineman delivered the opinion of the court.

The plaintiffs were the owners of a building and equipment in Farina, Illinois, used as a locker plant for processing and storing frozen foods. They contracted with Keith Borlin, defendant, to sell to him the real estate, business and equipment of the locker plant at a price of $18,500. The contract was dated April 1, 1947, and provided for a down payment of $625 with the balance payable in annual instalments over a period of years, with interest at 5 per cent per annum, the first instalment of $2,500 being due July 15, 1947.

The contract further provided that any additions should become part of the plant at the cost of the purchaser, and that the purchaser should have the option of returning the plant to the sellers upon sixty days notice after the second instalment of $2,500 became due.

The purchaser went into possession on April 1, 1947, but the down payment was not made until in June, at which time a more elaborate agreement was executed, containing the usual provisions for deed, abstract, insurance, etc., and for the retention of payments made as liquidated damages in event of default. It also provided that all locker rentals should be paid to and collected by the State Bank of Farina and the bank should annually see to the payment of the instalment due the sellers, and then turn over any balance to the purchaser.

The purchaser found this latter provision objectionable, and he persuaded plaintiffs to modify it. This was done by executing and attaching to the contract a rider providing that defendant should collect the locker rentals which he should deposit daily in the bank in an escrow account, from which the annual instalments plus interest would be paid to plaintiffs and the balance to defendant.

On August 13, 1947, the defendant mailed a notice to plaintiffs stating that on August 16 at 5:00 p. m. he was quitting the business, at which time "you may take over as you desire." They did so, perforce, since otherwise there might be extensive damage claims for spoiled food. Defendant had paid nothing on the contract except the original down payment of $625.

The plaintiffs thereupon filed this suit, which, after some amendments, consisted of a complaint in equity setting forth the facts above mentioned, and praying that the contract be cancelled and removed as a cloud on title, and also for an accounting of locker rentals which it was alleged the defendant had collected and converted to his own use, instead of depositing in the escrow account as agreed. The court granted the relief as prayed, and the defendant having admitted collecting and retaining locker rents in the sum of $2,062.50, ordered him to account to plaintiffs for that amount and gave judgment therefor.

The defendant has perfected this appeal from said decree, and here objects to that portion requiring him to account for the locker rentals which he collected and retained, claiming that they now belong to him. He also claims that he made repairs and improvements on the property at a total cost of $1,972 and that the plaintiffs must take the property and the down payment as liquidated damages. He says he is not guilty of any fraud, but was compelled to give up the contract because of physical incapacity resulting from injuries received in an accident, and therefore no constructive trust is involved. It is argued that, if he does owe the funds he converted, the plaintiffs must sue at law and cannot recover them in equity. And finally, it is asserted that the decree grants both rescission of the contract and specific performance thereof, which is inconsistent and improper.

We are unable to sustain any of these contentions. As compared to the total contract price, the

down payment was insignificant, being less than even one year's interest on the balance due.

As to improvements, the general rule is: Where the purchaser is in default, without fault on the part of the vendor, the making of valuable improvements unaided by some other equity will not entitle him to compensation; where the vendor has neither waived his legal rights nor committed any default, he cannot be involuntarily taxed with improvements made without his consent. This is especially true where the contract of sale expressly provides that the land and all improvements erected thereon shall revert to the vendor on the purchaser's default. 55 Amer. Jur., Vendor & Purchaser, 1031, sec. 637.

Actually, there is nothing to show how much, if any, benefit accrued to the property by reason of the expenditures made on repairs and alterations or improvements. There is merely defendants' statement of total disbursements without itemizing or attempting to show the actual improvement in value of the plant, if any. The chancellor has given effect to the contractual provision for liquidated damages, the validity of which was not questioned by defendant.

Upon the questions of fraud and constructive trust, it is obvious that, if a purchaser were given complete control of a valuable locker plant upon a payment of only $625, he would be in a position to collect large sums in locker rents, and then walk out, leaving the sellers the alternative of permitting damage to customers, or else supplying the services for which the rentals had been paid. It was to prevent this type of fraud that the contract originally provided for payment of the locker rents to the bank. The modification which the defendant secured did not give him any right to collect the fees as the owner or purchaser of the plant; he was merely substituted for the bank as escrow agent to collect the rentals and deposit them in the escrow account. In this respect he was acting in a

new and entirely different capacity. We are unable to agree with counsel that defendant was not in a position of trust and confidence, and that equity cannot declare a trust upon these funds. They came to him in his capacity as collecting agent for the parties, his duty was to deposit the funds daily in the escrow account, and no part of these funds have accrued to him personally.

We find no support in the record for appellant's statement that "appellees profited more from the transaction that the amount of the rentals which they seek to recover." The suggestion that appellees did not need to continue the operation of the plant, is untenable. The notice defendant sent clearly stated he was quitting the business three days later. To protect their investment, the owners had to prevent the ruin of the business, and this made it necessary to hire a man to run the plant. They have been obliged to pay his salary as well as power bills and any other expense of operation, while defendant has departed with more than two thousand dollars of rentals he collected in a few weeks time, most of it in July, which was the big month for locker rents: Thereupon he thrust the operation of the plant with its attendant expense upon the plaintiffs.

The relation of principal and agent is a fiduciary one. *Doner v. Phoenix Joint Stock Land Bank of Kansas City,* 381 Ill. 106. And on pages 114, 115 the court says: "Where one occupying a relation of trust and confidence to another, through any questionable means gains something for himself, which in equity and good conscience he should not be permitted to keep, equity will raise a constructive trust and compel him to turn it over to the one equitably entitled to it, or to otherwise execute the trust as the court may direct."

If the funds had been collected by the bank as originally contemplated, or had been deposited by the

defendant as agent of the parties under the rider which changed this, they would have been retained by plaintiffs as part of the liquidated damages under the contract. It is true that between a buyer and seller there is no relation of trust and confidence, for they are presumed to deal at arms length, and when an instalment came due, only the relation of debtor and creditor resulted. But this defendant assumed a new role when he secured the amendment which substituted himself for the bank as collecting agent, and thereby he acquired a position of trust and confidence which he will not be permitted to hide under the cover of his other position.

"The availability of a constructive trust as a mode of relief against unjust enrichment is not, in general, affected by the fact that the plaintiff has a cause of action at law, as distinguished from equity, for damages or other relief." 54 Amer. Jur. 169, sec. 219.

A constructive trust is a device used by chancery to compel one who unfairly holds money or property to convey such money or property to another to whom it justly belongs. *People ex. rel. Nelson v. Central Mfg. Dist. Bank,* 306 Ill. App. 15, 18. In our opinion, the chancellor was justified in regarding the defendant as a constructive trustee of the locker rents collected by him, and properly required him to account for them.

It would seem the foregoing analysis also disposes of appellant's other contention that the decree affords inconsistent relief. A vendor who exercises his option to terminate a contract cannot also hold the purchaser liable to complete the purchase or pay any part of the unpaid instalments. *Wollenberger v. Hoover,* 346 Ill. 511. The seller may insist upon specific performance, but he cannot do so at the same time he elects to rescind. *Pyle v. Crebs,* 112 Ill. App. 480. But these rules apply to cases where the seller who rescinds is seeking also to compel the purchaser

to pay under the contract with the *purchaser's* funds. In the case before us, the court has not ordered specific performance of the contract in whole or in part, the decree is not designed to make the defendant pay anything more from his own funds, he is merely required to account for money which he wrongfully converted.

The decree is affirmed.

*Decree affirmed.*

CULBERTSON, P. J., and BARDENS, J., concur.