## Soffee, Appellant, v. Hall.

Argued March 24, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Leo C. McCandless,* for appellants.

*Luther C. Braham,* with him *Thomas O. Cratty, Darrell L. Gregg,* and *Galbreath, Braham & Gregg,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 25, 1954:

That numerous errors were committed in this case is undoubted, but, for reasons that will appear, appellants are not in a position to take advantage of them on this record.

Plaintiffs, three sisters, brought a bill in equity against the defendant, their stepfather. The bill alleged that he was 85 years of age and that plaintiffs had advanced to him sums aggregating $2,500 which he recognized as a debt due to them. It further averred that plaintiff Bernice P. Soffee had provided a home for him, caring for and nursing him, and that he had

promised to will his house to her but had now informed her that he was about to become a resident of the Odd Fellows Home at Grove City, and to convey to it for his future care and maintenance a frame dwelling which he owned in fee simple in the City of Butler, and also to assign to the Home certain personal assets in accordance with a promise that he would turn over to it such property. The bill then stated that defendant's attempt to convey the property would place it beyond his ability to pay his obligations and be fraudulent as to plaintiffs, there not being sufficient property remaining in his hands to satisfy their claim. The bill prayed for an order restraining defendant from disposing of his property until he had made payment to plaintiffs, and requested that a receiver be appointed to take charge of his assets.

It is clear that this was a bill, not for specific performance of the alleged promise to will defendant's house to Bernice, but a bill to prevent a transfer of his property in fraud of creditors. Defendant filed preliminary objections which are not printed in the record but seem merely to have claimed that plaintiffs had an adequate remedy at law. In its opinion overruling the objections and ordering defendant to file an answer to the bill the court below properly stated that "if the defendant carries out his intention to convey his real estate and other assets to the Odd Fellows Home at Grove City, the consideration for such transfer would be the future care and maintenance of the defendant and probably burial at the time of death. This is a good consideration and the defendant has the right to do it if he so desires." Since this pronouncement correctly pointed out that a transfer of property for fair consideration is not fraudulent as to creditors it would properly have led to a dismissal of the bill had a demurrer thereto been filed.

Defendant filed an answer to the bill denying that plaintiffs had advanced any money to him, that he had ever promised to will his house to Bernice, or that she had provided a home for him and cared for and nursed him. It stated that he had entered the Odd Fellows Home at Grove City as a resident after agreeing to the usual arrangements of the Home with respect to his property, real and personal. Hearing was had and the court made findings of fact, one of which was that defendant had conveyed his real estate, life insurance, automobile and certain stock to the Odd Fellows Home for the Aged and Infirm of Western Pennsylvania for the sum of $1.00,—an erroneous finding in view of the fact that the consideration for defendant's conveyance was not really $1.00 but the obligation of the Home to care for and maintain him during the remainder of his life. The court ordered that the case be certified to the law side of the court to determine whether defendant was indebted to plaintiffs or any of them, and, if so, in what amount. This order was likewise erroneous in that it would have led to an entirely futile proceeding. It had been shown in the testimony that defendant's real estate of the assessed value of $3,000 (but claimed by plaintiffs to have a value of $7,000), his insurance policy in the amount of $3,000, the cash he turned over to the Home amounting to either $300 or $700, and the proceeds of the sale of an old automobile, aggregated a total of $7,000 or perhaps $10,000 in value, which could not legally be held to have been an unfair consideration for the obligation of the Home to maintain defendant for the remainder of his life and for the expenses of his burial. Plaintiffs, therefore, did not establish their claim that defendant's conveyance and transfer of his property to the Home was fraudulent, and accordingly there was no point in the court certifying the case

to the Court of Common Pleas for a jury trial to determine whether, and in what amount, defendant was indebted to plaintiffs, since such determination, even should it prove favorable to plaintiffs, would not entitle them to maintain their bill.

Defendant having filed exceptions to the court's findings of fact and order,[1] the next untoward event was that the court discharged the stenographer before he had transcribed the notes of the testimony he had taken at the hearing. Stating that because of the record of the testimony not being available it would be "unsatisfactory and useless for us to pass on the exceptions filed," the court made an order directing that the testimony be taken over again. From that order, as well as from the court's previous order certifying the case to the law side of the court, plaintiffs have taken the present appeal.

As already indicated, plaintiffs did not establish any right to the injunction sought by them on the ground that defendant had made a fraudulent conveyance of his property. However, apparently abandoning the theory and assertions on which they originally based their claim for relief in the bill in equity, plaintiffs now argue that they are entitled to have the dwelling house reconveyed by the Home to the defendant and to have specific performance of his alleged promise to will it to Bernice. Since they are appealing from the order for a rehearing and prefer to stand on the present record it is on that record that their case must now be judged, and, so judged, it is clear that, for several reasons, their action cannot be maintained. In the first place, the Odd Fellows Home has not been made a party to these proceedings, and of course,

---

[1] If plaintiffs also filed exceptions they are not printed in the record.

therefore, no decree compelling it to reconvey the property to defendant could possibly be made. In the second place, while it is true that an agreement to make a will and devise property in a stipulated manner is binding and irrevocable when supported by proper consideration,[2] and also true that relief in the nature of specific performance may be had of a binding promise to devise property if not barred by the statute of frauds[3] and that the admission by the defendant in his testimony of the making of such a promise may be sufficient to take it out of the operation of the statute,[4] nevertheless the terms of such a contract, in order to be enforceable, must be definite and certain,[5] which is far from being the case here. Defendant's version of his alleged promise was that "after I am through with the property Bernice can have the place provided we get along all right,"—an extremely vague statement on which to base a contractual obligation, especially in view of the proviso on which it was conditioned. In the third place, plaintiffs failed to establish that Bernice and defendant did in fact "get along all right"; there was no finding by the court to that effect and her assertion that she and defendant had lived happily together was contradicted by his testimony that he was obliged to do his own cooking and laundry and the various domestic duties about the house and when he became ill there was no one at home to care for him, which was why he had decided to enter the Odd

---

[2] *Cridge's Estate*, 289 Pa. 331, 337, 137 A. 455, 458; *Kocher Estate*, 354 Pa. 81, 85, 46 A. 2d 488, 490; *Gredler Estate*, 361 Pa. 384, 387, 65 A. 2d 404, 406.

[3] *Brinker v. Brinker*, 7 Pa. 53; *McGinley's Estate*, 257 Pa. 478, 483, 101 A. 807, 808; Page on Wills, vol. 4, p. 896, sec. 1736.

[4] *Williams v. Moodhard*, 341 Pa. 273, 280, 281, 19 A. 2d 101, 104, 105; *Zlotziver v. Zlotziver*, 355 Pa. 299, 302, 49 A. 2d 779, 781.

[5] *Craig's Estate*, 298 Pa. 235, 241, 148 A. 83, 85.

Fellows Home. Finally, there is the fact, as already stated, that the Odd Fellows Home, by its obligation to care for and maintain defendant, gave good consideration for the conveyance and transfer of his property, and there is no suggestion whatever on the record that before or at the time of entering into that obligation the Home had any knowledge, actual or constructive, of defendant's promise to Bernice. While an agreement to devise property will be enforced after the death of the promisor as against heirs, devisees, and volunteers, as well as against others holding the property with notice of the contract,[6] it certainly cannot be given effect as against a grantee of the property for consideration and without notice.

The record is remanded to the court below with direction to dismiss plaintiffs' bill and enter judgment for defendant; appellants to pay the costs.

[6] Cf. *Taylor v. Mitchell*, 87 Pa. 518; *VanMeter v. Norris*, 318 Pa. 137, 140, 177 A. 799, 800; 81 C.J.S., p. 596, §87.a.