UNITED STATES of America

v.

Molly G. BESS, Appellant.

No. 12026.

United States Court of Appeals
Third Circuit.

Argued Dec. 4, 1956.

Decided March 28, 1957.

Rehearing Denied May 20, 1957.

Morris J. Oppenheim, Asbury Park, N. J. (Daniel Oppenheim, Newark, N. J., on the brief), for appellant.

Kenneth E. Levin, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., Herman Scott, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, KALODNER, Circuit Judge, and KRAFT, District Judge.

BIGGS, Chief Judge.

The court below gave judgment in favor of the United States against the defendant, Molly G. Bess, widow of Herman Bess, on the theory that under Section 311 of the 1939 Code, 26 U.S.C.A. (I.R.C.1939) § 311, the defendant was a transferee of property of a taxpayer, her husband, who owed the government delinquent income taxes.

The facts are not in dispute. The defendant's husband died on June 29, 1950. At the time of his death there were in force eight insurance policies on his life. Seven of the policies were issued during 1934, 1935, 1936, and 1937. The eighth, a group insurance policy with no cash value, was issued June 19, 1950. Herman Bess had the right to change the beneficiary of the policies and also had the right to borrow upon the security of the cash surrender value of the seven policies described first herein. The defendant was named as beneficiary when the policies were issued to Herman Bess, and, except for temporary changes with respect to two policies,[1] the defendant remained the beneficiary. The government and the defendant have assumed, without dispute, that Herman Bess was solvent when the policies were issued, and have stipulated that he was solvent when the premiums were paid. The total cash surrender or loan value of all the policies was $3,362.53 at the time of Bess's death. The defendant received $63,576.95 as the total proceeds of the eight policies.

On July 17, 1952, more than two years after his death, the estate of Herman Bess was adjudged insolvent. Part payment has been made on the claims of the United States for income taxes owed by Herman Bess, but a balance of $8,874.57 remains unpaid. The United States instituted suit against the defendant for that amount plus interest from the date of assessment and was awarded judgment in the sum of $11,657.30. D.C.D. N.J.1955, 134 F.Supp. 467. Mrs. Bess has appealed.

The statute on which the alleged liability of the defendant is bottomed is Section 311 of the 1939 Internal Revenue Code, 26 U.S.C.A. (I.R.C.1939) § 311, set out in the margin.[2] It is the universal view that the statute created no new substantive rights and liabilities and that the only liabilities to be enforced thereunder are those existing in law or in equity when the enforcement proceeding is begun. Pearlman v. Commis-

[1] In one policy the beneficiary was changed from the defendant to the insured's estate on April 4, 1945, and on the same day the defendant was redesignated as the beneficiary; in another policy the beneficiary was changed from the defendant to the insured's estate on March 23, 1945, and on April 3, 1945 the defendant was redesignated as the beneficiary.

[2] Section 311 provides in pertinent part: "Transferred assets (a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

\*   \*   \*   \*   \*

"(f) Definition of 'transferee'. As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee."

sioner, 3 Cir., 1946, 153 F.2d 560, 561–562, and Rowen v. Commissioner, 2 Cir., 1954, 215 F.2d 641, 643. Herman Bess was domiciled in New Jersey up to his death. His widow's domicil remains there. In Pearlman v. Commissioner, supra, 153 F.2d at page 562, we stated that "On principle the question [as to the existence or non-existence of liability on the part of the widow] seems to us clearly to be one to be answered without reference to state law limitations." We also said, since we had before us a husband domiciled in Pennsylvania until his death with his wife's domicil remaining there, that "Whether the reliance is placed on general law as declared by federal courts, or on Pennsylvania law, we think the conclusion of the Tax Court must stand." We may perhaps remark here, without cynicism, that a declaration on principle is not necessarily a declaration of law, but we went on to say that we preferred to rest the decision on the wider ground that since there was a federal tax question to be decided it should be decided on general law as laid down by the Federal courts and not be subject to the limitation in the law of any State. We adhere to our former ruling but since this case may reach the reviewing Court,

other Courts of Appeals having reached the contrary conclusion, Rowen v. Commissioner, supra, and the authorities cited therein, 215 F.2d at pages 648–649, we have set out what we believe to be the status of Mrs. Bess under the law of New Jersey, were that law applicable, in *footnote 3 below*. Cf. Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239, and United States v. Scott, 8 Cir., 1948, 167 F.2d 301.

■■ As to the general law as declared by the Federal courts the decision of the Supreme Court in Central Nat. Bank of Washington v. Hume, 1888, 128 U.S. 195, 9 S.Ct. 41, 32 L.Ed. 370, is illustrative of features of it. The decision holds, *inter alia*, that it is the general rule that a policy and the money to become due under it, belong, the moment the policy is issued to the person named in it as the beneficiary. The policies of insurance in the Hume case quite possibly did not provide that the insured could change the beneficiary but this feature, as we have indicated, is irrelevant here. Hume was admittedly insolvent at the time that the insurance was effected and it was argued that the policies were within the provisions of 13 Elizabeth, c. 5. The Supreme Court was of the view that

3. As to the law of New Jersey the applicable sections are New Jersey R.S. 17:34–28 and 17:34–29, N.J.S.A. 17:34–28 and N.J.S.A. 17:34–29. Section 29 provides that every policy of life insurance made payable to or issued for the benefit of a married woman, or after its issue assigned or in any way made payable to a married woman, whether by her husband or by any other person, shall "inure to her separate use and benefit * * *" according to its terms unless premiums were paid in fraud of creditors as set out in Section 28. There can be no doubt that in the absence of fraud on creditors in the payment of premiums or assignment of the beneficial interest to some person other than to the wife, the wife's interest in the proceeds of a policy has a status described by the law of New Jersey as a "vested interest" and may not be reached by a creditor, even by the United States. Cf. Sullivan v. Maroney, 1909, 76 N.J.Eq. 104, 109, 73 A. 842, 843, 844, affirmed 1910, 77 N.J.Eq. 565, 78 A. 150, and Phoenix Mut. Life Ins. Co.

v. Connelly, 3 Cir., 1951, 188 F.2d 462, 464–465.

As we have stated the parties have agreed that Herman Bess was solvent when the policies were issued and that he was solvent at all times when premiums were paid. There therefore was no payment of premiums in fraud of creditors and Mrs. Bess was designated as beneficiary at all times save for two small irrelevant periods in respect to only two of the policies. See note 1, supra. As to the cash surrender value of the policies, amounting to $3,362.53, though we have found no case in point and none has been cited to us, we are of the opinion that the term "proceeds" as employed in the New Jersey statute means the full amount payable to the beneficiary upon the policy on the death of the insured. It follows therefore that under the law of New Jersey Mrs. Bess may retain the full proceeds of the policies in the instant case without liability for the claim asserted by the United States against her husband for unpaid taxes.

the statute of 13 Elizabeth governed and held *inter alia* that Hume's creditors were not entitled to recover the premiums paid by him on life insurance policies issued for the benefit of his wife and children. The statute of 13 Elizabeth was designed to prevent conveyances which defeated or delayed creditors. It declares, in substance, that every conveyance made to the end, purpose, and intent to delay, hinder, or defraud creditors and others of their just and lawful actions shall be void, with the proviso that nothing therein contained shall extend to defeat any estate or interest made on good consideration and bona fide to any person having, at the time, no notice of such fraud. 24 Am. Jur., Fraudulent Conveyances, § 4, p. 163. See Annotation, 31 A.L.R. 51. The statute of 13 Elizabeth is generally acknowledged to be the principal source of judicial decision as to when a conveyance is fraudulent. Id. at p. 164. The statute is declaratory of the existing principles of the common law. Ibid. We believe that the governing principles of the general law are as set out in this paragraph.

Coming now to our decision in the Pearlman case we find that the court below interpreted our ruling as requiring it to decide that the proceeds of the policies in the case at bar were transferred to Mrs. Bess[4] on her husband's death. We think that such a conclusion was not warranted by our Pearlman decision[5] nor is it supported by more recent cases.[6] The proceeds of the policies—putting cash surrender values to one side for the time being—were not the property of Herman Bess as required by Section 311(a) (1). He never possessed the right to receive the proceeds and there-fore he could not transfer them. Moreover, as we have stated, Bess was solvent when the policies were issued and solvent at all times when premiums were paid. In the Pearlman case, while Pearlman was solvent when the policies were issued and when some of the premiums were paid, after he became insolvent and up to the time of his death he continued to pay the premiums on the policies. In Pearlman we went no further than the Tax Court which held that the beneficiaries of the policies were transferees as to the cash surrender value of the policies. In the case at bar Mrs. Bess cannot be found to be a transferee of the *proceeds* of the policies under the general law as we have set it out.

The cash surrender values of the policies in the instant case present a different issue. Bess was adjudicated insolvent more than two years after his death but the account filed by Mrs. Bess as executrix makes it clear that he also was insolvent at the time of death. At the time of his death, as we have stated, the policies possessed a cash surrender or loan value of $3,362.53. He therefore possessed just prior to his death, a chose in action in the amount stated which he could have collected from the insurance companies in accordance with the terms of the policies. The Supreme Court in the Hume case, supra, seemed to recognize the payment of premiums as transfers and the incidence of the payments of premiums therefore timed the transfers here. By the terms of the policies in the Hume case nothing passed at the time of Hume's death. So was it here. It is therefore not realistic here, as the court pointed out in Rowen v. Commissioner, supra, 215 F.2d at page 647, in a like situation, to view Bess'

---

4. We conclude this because, while the proceeds of the policies amounted to $63,-576.95, and the judgment in favor of the United States to $11,657.30, the amount of the judgment far exceeded the cash surrender value of the policies which, as we have stated in this opinion, was $3,362.53.

5. The facts of the case as found by the Tax Court in 1944, 4 T.C. 34 disclose that the cash surrender values of the pertinent policies totaled $51,541 and that the tax liability was $25,713.57. See Rowen v. Commissioner, 2 Cir., 1954, 215 F.2d 641, 645, on this point.

6. See United States v. New, 7 Cir., 1954, 217 F.2d 166, 167, and Rowen v. Commissioner, 2 Cir., 1954, 215 F.2d 641, 644.

death as wiping out the loan or surrender values. Bess' death was merely a condition on the occurrence of which the loan or surrender values of the policies no longer were payable to him but became merged in the larger values which the insurance companies were obligated to pay to Mrs. Bess. The loan or surrender values were then an item of property and Mrs. Bess was a transferee of them within the meaning of Section 311 (a) (1). It follows that the United States is entitled to recover the amount of the loan or surrender values from her.

Other points raised by the parties do not require discussion.

The judgment of the court below will be vacated with the direction to enter judgment for the United States in conformity with this opinion.