**UNITED STATES of America**

v.

Joseph Anderson SCHOFIELD, 3rd, W. Bradley Ward, Administrator, D.B.N. C.T.A. of the Estate of Lemuel B. Schofield, Dec'd., Liberty Real Estate Bank & Trust Co., a Pennsylvania corporation, and Marvin Comisky, Guardians of Joseph Anderson Schofield, 3rd, and Premises in Schuylkill Township, Chester County, Pennsylvania, commonly known as the Anderson Farm, consisting of 131.452 acres.

Civ. A. No. 20977.

United States District Court
E. D. Pennsylvania.

June 21, 1957.

---

W. Wilson White, U. S. Atty., Henry P. Sullivan, Asst. U. S. Atty., George H. Bowers, Jr., and Paul D. Barker, Office of Regional Counsel, Internal Revenue Service, Philadelphia, Pa., for plaintiff.

Richard K. Stevens, Philadelphia, Pa., for estate of Lemuel B. Schofield, dec'd.

Bernard G. Segal and Josephine H. Klein, Philadelphia, Pa., for Joseph Anderson Schofield 3rd and guardians of Joseph Anderson Schofield 3rd.

VAN DUSEN, District Judge.

In order to satisfy substantial obligations[1] arising under the income tax provisions of the Internal Revenue Code, 26 U.S.C.A., for failure of Lemuel B. Schofield (hereinafter referred to as "decedent" or "deceased debtor"), who died July 3, 1955, to file any income tax

---

1. The assessments (all of which were made in 1955 after decedent's death) re-

cited in paragraphs 4 to 7 of the complaint exceed $950,000.

returns or pay any income tax for the years 1947 to 1954, inclusive, plaintiff seeks to recover the alleged cost of improvements made by the decedent during the years 1947 to 1955 on land in which he had a life estate. Alleging that the decedent was insolvent at all times during the period 1947 to 1955, plaintiff contends that the expenditure of $136,768.83 for improvements was a fraudulent transfer under the Pennsylvania Fraudulent Conveyances Act.[2]

The defendant, Joseph Anderson Schofield, 3rd (hereinafter called "remainderman"), who is the son of the decedent and whose remainder interest[3] in the land vested in possession on July 3, 1955, and his guardians have filed a motion for summary judgment, alleging that plaintiff is entitled to no relief since the remainderman has been confined in institutions since 1943, was adjudicated an incompetent in September 1955, and had nothing whatever to do with these improvements.

Defendant, personal representative of the deceased debtor's estate, has filed a motion to dismiss on the grounds stated in the motion for summary judgment and on the additional ground that the complaint fails to seek any remedy or relief against him.

By will and codicils probated shortly after her death on October 15, 1929, Sarah P. Anderson conveyed her entire interest in the improved farm land involved in this case to the decedent, as executor and trustee for Caroline Anderson, for life. Upon the death of Caroline Anderson (which occurred April 17, 1934), this improved farm land was conveyed to the decedent "for and during the term of his natural life, and at his death then to Joseph Anderson Schofield 3rd * * * and his heirs and assigns forever provided" he survived the decedent. Decedent had "possession of all and every part" of this improved farm land from October 15, 1929, until his death on July 3, 1955.[4]

The prayers for relief in the complaint are broad and include a prayer for relief "that is just, proper and equitable in the circumstances."

I. *Application of Uniform Fraudulent Conveyances Act (39 P.S. §§ 351-363).*

■ At least part of the relief sought by plaintiff falls within the rights granted to a creditor, such as plaintiff, if the improvements made by the decedent constituted a fraudulent conveyance under the Act's terms. See 39 P.S. §

2. This court has jurisdiction under 28 U.S. C.A. § 1343 and 26 U.S.C.A. § 7402(a). Since this action is not brought under 26 U.S.C.A. § 311, but under a state act (the Pennsylvania Fraudulent Conveyances Act, 39 P.S. § 351 ff.), "the general law as declared by the federal courts" (see United States v. Bess, 3 Cir., 1957, 243 F.2d 675) may be subject to the state court decisions interpreting that act. It is not necessary to decide this, since the authorities cited in footnote 8 below indicate that these improvements were a fraudulent conveyance under such "general law," as well as under the state act.

3. The defendant remainderman contends that his interest in the property was a "contingent remainder" under Pennsylvania law, since it was contingent upon his surviving the decedent, citing McCreary Trust, 1946, 354 Pa. 347, 47 A.2d 235; In re Bomberger's Estate, 1943,

347 Pa. 465, 469, 32 A.2d 729; In re Carpenter's Estate, 1941, 42 Pa.Dist. & Co.R. 367, 369.

4. The affidavit attached to the motion for summary judgment includes this language:
"* * * that during the period in which the said Lemuel B. Schofield was in possession of said premises he caused the said lands to be extensively cultivated and planted to crops and operated the said premises for general farming purposes and maintained a dairy herd thereon; he made physical improvements and maintained a residence thereon in which he lived and which he occupied as his legal domicile and he received, used and enjoyed the use, benefit, advantages and usufruct of the said premises and buildings and improvements thereon erected, at all times from the inception of his life estate on April 17, 1934, to the date of his death on July 3, 1955."

359(1).[5] The allegations of paragraphs 10 to 12 of the complaint [6] are sufficient to constitute the making of the alleged improvements fraudulent under this language of § 4 of the Act (39 P.S. § 354):

"Every conveyance made * * * by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." [7]

It has been consistently held that a conveyance of assets by an insolvent grantor under conditions providing that it shall be held, directly or indirectly, for his own use is fraudulent as to creditors. See Commonwealth v. Smith, 1942, 344 Pa. 381, 384–385, 25 A.2d 694; Commonwealth Trust Co. of Pittsburgh v. Cirigliano, 1945, 352 Pa. 108, 111, 41 A.2d 863; Toff v. Vlahakis, 1955, 380 Pa. 512, 518, 112 A.2d 340; Clark v. Beltz, 1955, 179 Pa.Super. 456, 460, 116 A.2d 85; Glenn, "Fraudulent Convey-

---

5. Whether the remedies available in cases of fraudulent conveyances are applicable in the federal court have, in the past, been decided on the basis of the law of the state where the federal court is sitting. See Glenn, "Fraudulent Conveyances and Preferences" (Rev.Ed.), § 62a, particularly cases cited in footnote 78. See Freitag v. The Strand of Atlantic City, 3 Cir., 1953, 205 F.2d 778, 782–784, where the state law was applied in a case involving federal claims. Cf. United States v. Bess, supra.

6. Paragraphs 10 to 12 of the Complaint provide:
"10. During the years 1947 to 1955, inclusive, the said Lemuel B. Schofield made large expenditures for improvements on the said 'Anderson Place' and did during the said years spent the sum of ($136,768.83) One Hundred Thirty-Six Thousand Seven Hundred Sixty-eight Dollars Eighty-three Cents for such improvements in and about the 'Anderson Place.'
"11. At all times during the said period and while the said large sums of money were being expended by the said Lemuel B. Schofield on the said 'Anderson Place' for which no consideration was received by him, *he was insolvent and his assets were wholly insufficient to satisfy and pay his debts* including the large tax indebtedness to the United States.
"12. The large expenditures made by the deceased Lemuel B. Schofield on the said 'Anderson Place' enhanced the value of the said farm and having been made while insolvent and without consideration constituted a fraudulent conveyance and transfer of assets of the said Lemuel B. Schofield that should have been used to satisfy the debts due to his creditor, the United States, and such expenditures were made to and did hinder, delay and defraud his creditors as those acts are defined by the common law of Pennsylvania and under the Uniform Fraudulent

Conveyance Act (39 Purdon's Statutes, Sections 351–363)." (Emphasis supplied.)
The allegations of insolvency italicized above are sufficient to put the defendants on notice of a charge of insolvency. See Sheffit v. Koff, 1953, 175 Pa.Super. 37, 39–40, 100 A.2d 393; Shaw v. Gaurdy, D.C.N.D.Ohio 1950, 11 F.R.D. 145; cf. United States v. Hicks, 5 Cir., 1954, 212 F.2d 356. Fed.Rules Civ.Proc. rule 8(a) and (e), 28 U.S.C.A., require a *short* and plain statement of the claim and "simple, concise, and direct" averments. Since fraud need not be established under § 4, F.R.Civ.P. 9(b) is inapplicable. However, the defendants are entitled to a more definite statement of the improvements alleged to have been made, as pointed out below.

7. Conveyance includes every "transfer" (39 P.S. § 351) and there was no fair consideration present, since no property was received, no advance secured, and no antecedent debt was satisfied (39 P.S. § 353). Cf. Commonwealth Trust Co. of Pittsburgh v. R. F. C., 3 Cir., 1941, 120 F.2d 254. In this connection, the following language from Glenn, "Fraudulent Conveyances and Preferences" (Rev. Ed.), § 307a (p. 535), is pertinent:
"* * * a special duty of explanation lies upon the grantee who is * * * a member of the debtor's family. The relationship is not a badge of fraud in the sense that a *prima facie* case is made against the grantee by the circumstances alone. But it is an aid to the creditor in that only slight evidence in addition is required for a *prima facie* case. And if, at the close of the whole case, the grantee has not given evidence, or presented good excuse for not taking the stand, the creditor should recover."
See In re Elliott, D.C.E.D.Pa.1948, 83 F.Supp. 771.

ances and Preferences" (Rev.Ed.), § 277, p. 474.[8]

As Professor Glenn has stated, at page 474 (§ 276) of the above-mentioned treatise, "When a debtor expends money in exchange for benefits conferred upon a third person, it should be asked whether the debtor's relations with the third person are such, by way of contract or property interest, that the transaction will increase the estate of the debtor rather than diminish it, or at least will leave the debtor's estate substantially as it was." Although defendants contend that the spending of over $136,500 on the life estate converting money into improvements was a substitution of assets which "were fully as available to his creditors as had been the money with which he paid for the improvements," [9] it is clear from the authorities discussed under II below that the decedent's interest in the sum of $136,500 was reduced from an absolute interest in cash to a life interest in improvements,[10] which

---

**8.** To the extent that the language in Soffee v. Hall, 1954, 377 Pa. 306, 105 A.2d 144, relied on by defendants, is inconsistent with these cases, it must have been modified by the following language of the Supreme Court in 1955 in the Toff case, supra, 380 Pa. at page 518, 112 A. 2d at page 343, quoting with approval from the Smith case:

"* * * Where a conveyance of property is made in consideration of an agreement to support the grantor in the future, it is invalid as to creditors if by the conveyance the grantor renders himself unable to pay his debts, the theory being that a conveyance whereby a debtor puts his property beyond the reach of his creditors under an agreement that it shall be devoted in any way to his own use is constructively fraudulent (citing cases) * * *."

If "the general law as declared by the Federal courts" determines whether fraudulent conveyances were involved in these improvements (see United States v. Bess, supra, 243 F.2d 675), the United States Supreme Court has stated in Central Bank of Washington v. Hume, 1888, 128 U.S. 195, 209, 9 S.Ct. 41, 46, 32 L.Ed. 370:

"Cases might be imagined of the payment of large premiums, out of all reasonable proportion to the known or reputed financial condition of the person paying, and under circumstances of grave suspicion, which might justify the inference of fraud on creditors in the withdrawal of such an amount from the debtor's resources; * * *."

See, also, United States v. Bess, supra, 243 F.2d 675.

Since income tax liability matures on the day the return is required to be filed and the correct amount of the tax liability becomes due at that time, regardless of when the deficiency assessment may be made (see Hartman v. Lauchli, 8 Cir., 1956, 238 F.2d 881, 887–888, rehearing denied 1957, certiorari denied 1957, 77 S.Ct. 1048), and since paragraph 8 of the complaint sets forth substantial income tax liabilities (including penalties and interest) accruing against decedent during the period he was spending over $136,500. on the property in which he had his life estate, the above-mentioned "general law" would seem to require that plaintiff be given an opportunity to submits its evidence to a fact-finder in an effort to persuade such fact-finder to draw "the inference of fraud on creditors in the withdrawal of such an amount from the debtor's resources."

The court said, further, in the Hume case, supra, 128 U.S. at page 211, 9 S.Ct. at page 46:

"If actually insolvent, he is held to knowledge of his condition; and if the necessary consequence of his act is to hinder, delay, or defraud his creditors, within the statute, the presumption of the fraudulent intent is irrebuttable and conclusive, and inquiry into his motives is inadmissible."

Also, it would seem clear that the purpose of the Uniform Act was to make fraudulent any transfer which would hinder and delay creditors, even though the grantor would derive full benefit from it. See McLaughlin, "Application of Uniform Fraudulent Conveyance Act." 46 H.L.R. 404, 415, 418; United States v. Bess, supra, 243 F.2d 675.

**9.** Page 9 of defendants' brief.

**10.** At page 22 of defendants' brief, reference is made to the authorities in 24 A.L.R.2d 11, 31, pointing out that any valuation of a life tenant's interest "is to be measured not by the cost of the improvements, but by the amount to which they have enhanced the value of the owner's estate * * *." In Datesman's Appeal, 1889, 127 Pa. 348 at page 358, 17 A. 1086, at page 1087, 1100, the court pointed out, "A life-estate is an

reduction was a substantial diminution of the decedent-debtor's estate.

II. *Right of plaintiff to seek relief after death of decedent.*

■ Defendants contend that, since the owner of an estate for life cannot voluntarily improve the land in which he has only a limited interest and charge part of the expense against the future interest in land,[11] any right which decedent's creditors, including plaintiff, had in the improvements was completely extinguished by his death.[12] However, this legal principle is subject to

the well-recognized right of creditors to reach any interest conveyed by a decedent for his own benefit,[13] particularly at the time he was insolvent, if the exercise of such right does not interfere with the existing rights of others, such as the defendant remainderman, in the property. See Mackason's Appeal, 1862, 42 Pa. 330; In re Mogridge's Estate, 1941, 342 Pa. 308, 311–312, 20 A.2d 307; In re Bowers'· Trust Estate, 1943, 346 Pa. 85, 89, 29 A.2d 519.[14]

Also, the fact that a debtor has died has never been held to prevent his cred-

---

uncertain thing, and an adverse sale thereof can rarely take place without a serious sacrifice."

11. See Restatement of Property, § 127, Comment a; 33 Am.Jur. § 457. p. 985; Datesman's Appeal, 1889, 127 Pa. 348, 359, 17 A. 1086. It is noted that the dictum in this case is qualified by the later language approved by the Pennsylvania Supreme Court in In re Hoyt's Estate, 1912, 236 Pa. 433, at pages 437–438, 84 A. 835, at page 836, where it is stated that a remainderman may be required to contribute to the life estate where its holder was, as would appear true of Mr. Schofield, "the principal object of the testator's bounty."

12. The fact that notice of assessment and demand creating a lien may be required before death in order to assert transferee liability under 26 U.S.C.A. § 311 (1939 Code) does not mean that plaintiff is required to proceed under this section, rather than under the Fraudulent Conveyance Act. For this reason, cases such as those cited by plaintiff at page 6 of its brief are inapplicable. Cf. United States v. Hoper, 7 Cir., 1957, 242 F.2d 468, 469–470, pointing out the reasons for requiring exhaustion of remedies against the transferor in transferee liability cases under the above-mentioned § 311.

13. The cases holding that a man may not place assets beyond the reach of creditors by converting them into property held by himself and his wife as tenants by the entireties are another example of a policy represented by this legal principle. See Taylor v. Kaufhold, 1954, 379 Pa. 191, 108 A.2d 713; Amadon v. Amadon, 1948, 359 Pa. 434, 59 A.2d 135.

14. Defendants apparently contended at the oral argument that this principle is inapplicable, since a legal, rather than an

equitable, life estate is reserved by the settlor-debtor. See Restatement of Property, § 127, comment e. However, in the leading case of Mackason's Appeal, supra, the principle was rested on language of Chancellor Kent, Chief Justice Gibson, and "English decisions" without any such distinction. See this language of the court 42 Pa. at pages 338 & 339:

"Chancellor Kent, in Vol. 4, p. 311, of his Commentaries, states the law of such an attempt thus: 'The policy of the law will not permit property to be so limited as to remain in the grantor for life, free from the incidents of property, and not subject to his debts.'

"So in Johnson v. Harvey, 2 [Pen. & W.] Pa. 82, Gibson, C. J., states the same thing to be law, and the reasons for it, viz., 'That the statute of 13 Eliz., which proposes to avoid conveyances with intent to delay, hinder, and defraud creditors, would be of little use if a debtor might put his estate beyond the reach of his creditors and still *get a living from it.*' He puts it upon the statute of 13 Eliz. as void.

\* \* \* \* \*

"There are numerous English decisions cited by the auditor to show that a settlement is fraudulent under the statute of 13 Eliz. where the settlor takes back to himself an estate for life: 1 Atk. 13; 2 Id. 480, 512, 600; 2 Vern. 510. This is just what was in substance said by Chancellor Kent, and Gibson, C. J., cited above."

See, also, cases at 93 A.L.R. 1211. The fact that these cases involved remainders subject to the appointment of the debtor does not seem significant, since any right of plaintiff cannot diminish the value which the remainder would have had without the improvements at the time of decedent's death. See Discussion under III below.

itors from reaching the interest which the debtor had in property which has been fraudulently conveyed the moment before his death in a variety of similar situations. See Mackason's Appeal, supra; United States v. Bess, 3 Cir., 243 F.2d 675, and cases there cited.

III. *Measure of relief to which plaintiff may be entitled.*

In similar, but not identical, situations the creditors of a debtor placing improvements on the land of another have been permitted to reach the value of such improvements. See Curtis & Co. v. Olds, 1915, 250 Pa. 320, 324–325, 95 A. 526;[15] People's Nat. Bank of Pittsburg v. Loeffert, 1898, 184 Pa. 164, 38 A. 996.[16] Although the extent of the recovery, if any, to which plaintiff is entitled cannot be determined until the evidence has been produced in support of the complaint, it would seem most probable that the plaintiff will not be able to recover any more than the lesser of the following amounts: (1) the amount spent by the decedent for improvements (as opposed to items of ordinary maintenance and repair); (2) the amount of the excess, if any, of the value of the land with all improvements at the time of decedent's death over the value it would have had at that time without the improvements made by the decedent.[17]

■ It is clear, in any event, that any invasion of the remainder interest of the incompetent defendant in the land without the alleged improvements would be a violation of established property rights. See In re Crawford's Estate, 1949, 362 Pa. 458, 67 A.2d 124; In re Warden's Trust, 1955, 382 Pa. 311, 115 A.2d 159; cf. Datesman's Appeal, 1889, 127 Pa. 348, 17 A. 1086, 1100. A construction of the Uniform Fraudulent Conveyances Act and of the Internal Revenue Code of 1939 invading such rights would raise grave doubts as to their constitutionality and, hence, should be avoided. Richmond Screw Anchor Co. v. United States, 1928, 275 U.S. 331, 346, 48 S.Ct. 194, 72 L.Ed. 303; Jay v. Boyd, 1956, 351 U.S. 345, 357, 76 S.Ct. 919, 100 L.Ed. 1242 (footnote 21).

IV. *Indefinite allegations as to improvements.*

■ Paragraphs 4 and 5 of the motion for summary judgment complain

---

15. The court said in that case, 250 Pa. at pages 324–325, 95 A. at page 527:

"If the husband is in embarrassed circumstances at the time he makes improvements in his wife's land, the money or materials furnished will be regarded as a gift in fraud of his creditors [citation] and such a gift is treated in the same manner as any other voluntary conveyance in fraud of creditors [citation] * * *.

"It is suggested that the wife did not participate in the fraud in the present case. But a sound and proper rule would require that a voluntary gift be held void, if made to defraud creditors, whether the donee participates in the fraud or not. A creditors' bill will lie to reach improvements made by a debtor on the real estate of another. (Citing cases)."

16. In the Loeffert case, the court said, 184 Pa. at pages 172–173, 38 A. at page 997:

"As the debtors had no interest in the land which their personal property went to improve, a decree making a judgment against them a lien upon the land does not seem regular. If they had conveyed the land or taken title in the name of another a reconveyance might have been ordered or the conveyance set aside and their judgment decreed to be a lien. This would have made a judgment against them a lien on their own property which they had fraudulently concealed. A decree in this case ascertaining the amount of the debtor's property which had become merged in the real estate, and awarding a lien for the amount, would be more logical and more in harmony with chancery practice than the one made, and it would as effectually secure the rights of the plaintiffs."

17. See Restatement of Restitution, § 42, p. 169. Cf. People's Nat. Bank of Pittsburg v. Loeffert, supra; Allen v. Borlin, 1949, 336 Ill.App. 460, 84 N.E.2d 575, 577–578. It is noted that the remainderman was being treated in institutions for mental illness during the entire time these improvements were made and, hence, could not have known of them. See affidavit attached to motion for summary judgment.

of the inadequate description in the complaint of the alleged improvements. These paragraphs will be treated as a motion for more definite statement under F.R.Civ.P. 12(e) and plaintiff will be given ninety days within which to amend its complaint accordingly.[18]

V. *Decedent's Estate's motion to dismiss.*

 Decedent's personal representative contends that this action should be dismissed as to him since the complaint fails to seek any remedy or relief as to him. The complaint asserts a "right to relief" arising out of the alleged series of transactions,[19] even though no judgment for this relief may be entered in this proceeding. In view of (a) the consistent holdings of the earlier federal cases, that the personal representative of a deceased debtor is a proper party defendant in a suit alleging a fraudulent conveyance, where the alleged fraudulent conduct to be investigated is on the part of that deceased debtor,[20] and (b) the fact that the defendant remainderman has challenged the allegation of the decedent's insolvency,[21] this motion to dismiss will be denied, without prejudice to the right of the personal representative to renew it at the trial or at any time that more facts are placed on the record by discovery proceedings, stipulations, or otherwise.

### Order

And Now, June 21, 1957, It Is Ordered (a) that the Motion to Dismiss is Denied, without prejudice; (b) that paragraphs 4 and 5 of the Motion for Summary Judgment are Granted as a Motion For More Definite Statement under F.R.Civ. P. 12(e) and that plaintiff is granted ninety (90) days to comply with such Motion; and (c) that in all other respects the Motion for Summary Judgment is Denied.

---

18. No reliance was placed at the argument on paragraph 8 of the motion for summary judgment or on paragraph 5 of the motion to dismiss.

19. See F.R.Civ.P. 20. Facts developed at the trial may justify relief against the decedent's personal representative. For example, his uninterrupted possession of the land from October 15, 1929, to July 3, 1955 (first as executor and trustee and later as life tenant) may make it necessary for his personal representative to execute certain papers in order to make good title in connection with the proposed sale of the land being made in accordance with the stipulation and order of October 4, 1956, or in order to reach the $136,768.33 to be substituted in lieu of the land at the time of settlement.

20. American Surety Co. of New York v. Conway, D.C.D.N.J.1915, 222 F. 140, 142; Allen v. Hauss, D.C.E.D.Mich.1923, 290 F. 253, 254; Dykes v. Little, 8 Cir., 1928, 31 F.2d 742, 744; and cases cited in those cases. Cf. Swan Land & Cattle Co. v. Frank, 1893, 148 U.S. 603, 610–611, 13 S.Ct. 691, 37 L.Ed. 577.

21. See paragraph 7 of motion for summary judgment.